IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DANIEL L. BARNES, III,<br><br>Ross Correctional Institution<br>P.O. Box 7010<br>16149 State Route 104<br>Chillicothe, Ohio 45601<br><br>**Petitioner,**<br><br>     VS.<br><br>MARK HOOKS,<br><br>Warden<br>Ross Correctional Institution<br>P.O. Box 7010<br>16149 State Route 104<br>Chillicothe, Ohio 45601<br><br>**Respondent,** | Case No.:<br><br><br>**EVIDENTIARY HEARING REQUESTED**<br><br>**DISCOVERY REQUESTED** |

## PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

### *I. Parties*

1.    Petitioner, Daniel L. Barnes, III, is currently serving a ***twenty-nine-year*** sentence at the

Ross Correctional Institution.  He is represented in these proceedings by The Law Office

Of Eric J Allen, Ltd, 4605 Morse Road, Gahanna, Ohio 43230.

2.    Respondent, Mark Hooks, is the warden of the Ross Correctional Institution.

The warden is represented in these proceedings by the Attorney General, Michael

DeWine, 30 E. Broad Street, 17th Floor Columbus, OH 43215-3428.

**Custody of Petitioner**

3.      Petitioner is being held by the state of Ohio at the Ross Correctional Institution, where

the Respondent is the warden.   He is serving a twenty-nine-year sentence from the

Muskingum County Court of Common Pleas.

### *II. Jurisdiction*

4.      The United States District Court has jurisdiction over this petition for a writ of habeas

corpus pursuant to 28 U.S.C. §§ 2254 and 1331. Petitioner is in custody pursuant to

judgment of an Ohio state court and seeks relief claiming his imprisonment and

sentence are in violation of his rights under the United States Constitution.

### III. Venue

5.      Venue is proper in the United States District Court for the Southern District of Ohio,

Eastern Division because Petitioner's conviction was obtained in the Muskingum County

Common Pleas Court in Zanesville, Ohio. *See 28 U.S.C. § 2241(d).*

### *IV. Procedural History of the case:*
*Statement of the Facts*

6.      On June 8, 2013, Daniel L. Barnes III, also known as "Louie" met up with James Martin,

Eric Thornton, also known as "Fats" and James Ricket, also known as "Hub" at the Cozy

Corner bar in Zanesville, Ohio. They all decided to go bar hopping in Mr. Martin's

vehicle.

7.      On the way to South Zanesville, Mr. Martin decided to take a detour by detour by making

a left hand turn onto Shelby to drop off crack cocaine to house. As Mr. Martin went into

o      the house, the other three remained in the vehicle and were discussing the quality of the

drugs that Mr. Martin sells.

8.     Petitioner had opened the back-passenger door to smoke a cigarette and got it caught on something in the road. When Mr. Martin returned to the vehicle, he had heard the others laughing and making fun of him and became very angry. At that point, he put the vehicle in reverse without Petitioner being able to shut this door and the door was damaged. Mr. Martin then exited the vehicle as did Mr. Thornton.

9.     Mr. Martin was now very angry and began to head around the car towards the Petitioner who was still seated in the back-passenger seat. Mr. Rickets got out of the vehicle as well and stepped up on the back panel of the hood to observe what was going on. As Mr. Martin was moving towards the Petitioner, Mr. Thornton blocked his way. Mr. Barnes had now gotten out of the car and all four individuals were now at the back of the vehicle.

10.    At that time, Mr. Martin spit into the face of the Petitioner. Following this incident, Mr. Martin and the Petitioner were now in the middle of Cliffwood Avenue preparing to engage in a fight. The Petitioner did proceed to punch Mr. Martin. This caused Mr. Martin's glasses to fly off his face and caused him to fall on the ground. Mr. Martin then tried to get up. He was on the sidewalk by the curb to a residence. Mr. Martin reached into his pants pocket and the middle of his pants. Petitioner became concerned because he knew that Mr. Martin had a firearm on his person. Petitioner then grabbed the wrist of Mr. Martin and a struggle for the gun began. The struggle had taken both men to the entryway of the residence of June Jones where they continued the struggle in the bushes in her yard. Eventually, the fight made it onto the front porch of the residence where Ms. Jones opened her front door. Petitioner screamed out to Mrs. Jones to call the police. The Petitioner had known Ms. Jones since 2000. During the scuffle in the bushes, both men struggled for the gun, the Petitioner felt as though Mr. Martin was getting

control so he bit him on the shoulder and was using his hand to gouge or scratch or do whatever he could to gain control of the firearm. The firearm did discharge because of the struggle. The Petitioner did eventually gain control of the weapon and flung it to the street where Mr. Thornton was in the parked vehicle.

*Statement of the Case*

*<u>Trial</u>*

11.     On **September 14, 2013**, an Indictment was field in the Muskingum County Court of Common Pleas charting the Petitioner with two counts of Kidnapping under R.C. 2905.01(A)(2) and R.C. 2905.01(A)(3), felonies of the first degree, one count of Aggravated Robbery under R.C. 2911.01(A)(1), a felony of the first degree, one count of Aggravated Robbery under R.C. 2911.01(A)(1), a felony of the first degree with a gun specification under R.C. 2941.145 and one count of Having a Weapon Under Disability under R.C. 2929.13(A)(3) a felony of the third degree.

12.     On **September 24, 2013**, Petitioner entered a plea of not guilty. There were several pre-trial motions filed by Petitioner.

13.     A two-day jury trial was conducted on **January 13, 2015**. The jury found the defendant guilty of Aggravated Robbery with a gun specification, Felonious Assault with a gun specification, and Having a Weapon While Under Disability. The Petitioner was found not guilty on both kidnapping charges. A Sentencing Hearing was conducted on **February 17, 2015**, Petitioner was sentenced to eleven years on the Aggravated Robbery, eight years on the Felonious Assault, three years on the Weapons Under Disability, and two three-year mandatory sentences on each gun specification for an

aggregate total of twenty-eight years all of which is to be served consecutively to a

sentence the Petitioner was already serving.

<u>Direct Appeal</u>

14.     A notice of appeal and docketing statement was timely filed on **March 19, 205.**  The

record in this matter was filed on **April 20, 2015**.  Four extensions of time were granted

to the Petitioner at which point there was a change of Appellate Counsel.  Two more

extensions of time were granted, and Petitioner's merit brief was field on **October 15,**

**2015.**  Brief of the Appellee was filed on **November 2, 2015.**  Petitioner was granted on

extension of time and his reply brief was filed on **November 23, 2015**.  Oral arguments

were set for **January 5, 2016**.  Five assignments of error were raised:

> *1.* **THE GUILTY VERDICTS FOR AGGRAVATED ROBBERY WITH A FIREARM SPECIFICATION, FELONIOUS ASSAULT WITH A FIREARM SPECIFICATION AND HAVING A WEAPON WHILE UNDER DISABILITY WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW**

> **2.     THE APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE STATE AND FEDERAL CONSTITUTION.**

> **3.     THE TRIAL COURT ERRED IN ANSWERING A QUESTION FROM THE JURY DURING DELIBERATIONS WITHOUT THE PRESENCE OF APPELLANT THEREBY DEPRIVING HI OF A FAIR TRIAL AS GUARANTEED BY THE STATE AND FEDERAL CONSTITUTIONS**

> **4.     THE TRIAL COURT VIOLATED APPELLANT'S STATE AND FEDERAL DOUBLE JEOPARDY PROTECTIONS, STATE AND FEDERAL RIGHTS TO DUE PROCESS, AND R.C. 2941.25 BY FAILING TO MERGE THE ALLIED OFFENSES OF AGGRAVATED ROBBERY AND FELONIOUS ASSAULT WHICH WERE BASED ON THE SAME ACT OF VIOLENCE**

> **5.     THE TRIAL COURT PLAINLY ERRED IN IMPOSING MAXIMUM CONSECUTIVE SENTENCES FOR APPELLANT'S**

**SEPARATE CONVICTIONS RENDERING THE SENTENCE
CONTRARY TO LAW**

15.    The Fifth District Court of Appeals affirmed the Petitioner's convictions entered by the

Muskingum County Court of Common Pleas. Appellant's sentence is vacated, and the

matter remanded to the trial court for re-sentencing in accordance with the opinion of the

Fifth District Court of Appeals and the Law on **March 17, 2016**.

16.    On **March 27, 2016**, a re-sentencing hearing was conducted pursuant to the

Opinion of the Fifth District Court of Appeals. Petitioner was sentenced to eleven years

on the  Aggravated Robbery, eight years on the Felonious Assault, three years on the

Weapons Under Disability, and two three-year mandatory sentences on each gun

specification for an aggregate total of twenty-eight years all of which is to be served

consecutively to a sentence the Petitioner was already serving.

17.    A Notice of Appeal was filed on **April 27, 2016** with The Ohio Supreme Court. The Ohio

Supreme Court declined jurisdiction on **July 25, 2016**.  No review was sought to the

United States Supreme Court.

18.    On **November 1, 2016**, Petitioner filed a Pro Se Application to re-open the appeal. On

**November 7, 2016**, the State filed an opposition motion to the Petitioners motion. On

**December 5, 2016**, a Journal Entry was issued denying Petitioner's motion to due to

being filed untimely.

19.    On **January 17, 2017**, a Notice of Appeal was filed to The Ohio Supreme Court. On

**June 5, 2017,** The Ohio Supreme Court declined jurisdiction.

*Other petitions, motions filed with respect to the judgment of the Muskingum County Common Pleas Court*

**Other Motions:**

20.    On **April 5, 2016**, a Motion for New Trial was field. On **April 14, 2016**, a Reply to the State's Response to Defendant's Motion for New Trial was filed. On **May 12, 2016**, a corrected affidavit of Daniel Barnes was filed. On **September 16, 2016**, a Motion for Leave to file a Motion for New Trial Instanter and Nunc Pro Tunc was filed.

21.    On **November 3, 2016**, a Motion for Grand Jury Transcript was filed.

22.    On **March 15, 2017,** a Motion for Leave to Supplement Defendant's Motion for Leave to File Motion for New Trial was filed.

23.    On **November 1, 2017,** the Court Denied the various motions indicating the Defendant failed to provide newly discovered evidence or substantive grounds for a new trial.

## *V. Grounds for Relief*

### *Ground Number One*

***PETITIONER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT AND BY STRICKLAND V WASHINGTON AND ITS PROGENY***

Petitioner was denied effective assistance of counsel.

## **LEGAL STANDARD**

24.    In *Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984),* the Supreme Court summarized the standard for determining whether counsel's assistance was so defective as to require that a conviction be reversed: First, the

defendant must show that counsel's performance was deficient. This requires showing that counsel     made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must     show that the deficient performance prejudiced the defense. This requires showing     that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial     whose result is reliable.

25.     A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* This requires showing that "counsel's errors were so serious as to deprive the Petitioner of a fair trial, a trial whose result is reliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687 To establish prejudice, the Petitioner must show there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

26.     A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the Petitioner must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland v. Washington* (1984), 466 U.S. 668, 687-689;

## CLAIM RAISED IN STATE COURT

27.     Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. *28 U.S.C. § 2254(b) and (c); see also Rose v. Lundy, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).* This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.*

*Ct. 1728, 144 L. Ed. 2d 1 (1999).* In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990).* The exhaustion requirement, however, "refers only to remedies still available at the     time of the federal petition." *Engle v. Isaac, 456 U.S. 107, 125 n. 28, 102 S. Ct. 1558, 71  L. Ed. 2d 783 (1982).* It "does not require pursuit of a state remedy where such a pursuit  is clearly futile." *Wiley v. Sowders, 647 F.2d 642, 647 (6th Cir. 1981).*  An ineffective assistance claim was raised in the Fifth District Court of Appeals.  The following are the instances in which Petitioner felt his counsel was deficient.

- Failure by the attorney to object to a question on redirect that was leading and beyond the scope of cross (T.P., Vol 1, at page 213)

- Failed to object to the testimony of Patrolman Andrews as hearsay (T.P. Vol 1, at pages 228-232)

- Failed to object to Patrolman Groves who testified what Patrolman Andrews told him.  Hearsay without exception.   (T.P., Vol 1, at page 258.

- Failed to cross examine George Guy.  This witness gave conflicting accounts of the timing of when this incident allegedly occurred and could not initially identify petitioner.

- Failed to object to the Detective's testimony regarding the amount of damage to Martin's vehicle.   This was speculation and prejudicial. (T.P., Vol II, at page 322-323)

- Failed to request lesser included offenses of assault and theft.

- Failed to insist his client be present during a question by the jury

- Failure to call corroborating witnesses

28.    Petitioner also raised this issue of ineffective assistance of counsel in his pro se

memorandum in support of jurisdiction.

## STATE COURT'S TREATMENT OF THE ISSUE

29.    The Fifth District Court of Appeals found:

> Appellant maintains his trial counsel was ineffective in failing to object to witness testimony presented at trial. Appellant cites the testimony offered by James Ricket on cross-examination. Specifically, Appellant argues the State's questioning was leading and beyond the scope of direct examination. During the testimony, Ricket testifies he heard Appellant demand "stuff" from Martin, and then Appellant took it. Tr. at 213. However, upon review of the transcript cited supra in our analysis and disposition of the first assignment of error, Ricket had testified on direct examination there were words exchanged between Appellant and Martin, and Appellant had told Martin to give him his money and to get out of the car. Tr. at 200. Therefore, the testimony elicited on cross-examination by the State was not beyond the scope of direct examination. We do not find trial counsel was ineffective for failing to object to the testimony. Further, Appellant has not demonstrated prejudice as a result of any alleged error.
>
> Appellant further cites testimony offered by Patrolman Andrews as to events Martin had told him, which should have been objected to as hearsay. Appellant maintains the testimony of the law enforcement officer bolstered allegations made by Martin. Patrolman Andrews testified at trial as to Martin opening the door of his cruiser and relating the incident to him. The evidence was not offered for the truth of the matter asserted, but rather as cumulative evidence to the testimony offered by Martin and Ricket previously as cited above. Therefore, Appellant has not demonstrated prejudice as a result of the testimony. In addition, Appellant maintains his trial counsel failed to object to testimony offered by Patrolman Groves regarding statements made by Patrolman Andrews, which he asserts also constituted hearsay. Patrolman Groves testified Patrolman Andrews radioed him and informed him the subject who assaulted Martin was Appellant. Upon review of the record, and as set forth above, Patrolman Groves testified he responded to a call of an assault with a handgun with his K-9 officer. He observed a suspect run between two houses, and exited his vehicle to chase on foot, following the human scent. His K-9 alerted to something dropped by the suspect, which later was identified as a Glock 23 handgun with a laser. Patrolman Andrews testified Martin was on foot and entered his cruiser. Martin told him he had been robbed by Appellant and assaulted. Andrews reported the incident to Groves.
>
> We find the information was not offered for the truth of the matter asserted but offered to demonstrate the reasoning as to why Patrolman Groves chased a suspect. Moreover, the information was cumulative to the testimony of Martin who testified at trial he told Patrolman Andrews he had been assaulted by

Appellant. Therefore, Appellant has not demonstrated, but for the alleged error, the outcome of the trial would have been otherwise, pursuant to the second prong of Strickland. In addition, Appellant notes his counsel elected not to cross-examine George Guy, a witness at trial, despite the discrepancy in his testimony as to the time of day. Appellant argues his counsel could have shown the jury Guy could not have seen Appellant get out of the car after the alleged incident since the incident occurred two hours after Guy testified the two persons exited the vehicle.

Upon review of Guy's testimony, he testified he was walking his dog and observed two males exit the vehicle, one with braids. He testified it was around eleven in the evening, as when he returned the news was coming on. He called 9-1-1. Patrolman Barnhart responded to the call and testified at trial. Upon review of the entire record, we find Appellant has not demonstrated, but for any presumed error, the outcome of the trial would have been otherwise. Therefore, Appellant has not met the second prong of Strickland. Further, Appellant maintains his counsel failed to object to speculative testimony offered by Detective Moore regarding how the damage occurred to Martin's vehicle. Martin testified the door could have been pushed too far in one direction. Tr. at 322-323. Appellant maintains hearing the testimony from a law enforcement official on behalf of the State permitted the jury to lend truth and value to the testimony. Appellant has not demonstrated but for the alleged error, the outcome of the trial would have been otherwise. Damage to the car door was not an issue at trial, and both parties stipulated a fight took place between them. Appellant has not demonstrated prejudice because of the testimony and therefore has not satisfied the second prong of Strickland. Appellant also argues his trial counsel erred in not requesting a jury instruction on the lesser included offenses of assault and theft. We find Appellant has not demonstrated ineffective assistance of counsel in not requesting the lesser included offenses because Appellant completely denied not only having a firearm but also completely denied committing any theft offense. Therefore, we find it was a tactical decision of trial counsel to pursue an outright acquittal on the charges rather than attempting to mitigate the seriousness of the offenses. As to the failure to request the instructions, a trial court must give all instructions which are relevant and necessary for the jury to weigh evidence and discharge its duty as the trier of fact. State v. Comen, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990). Even though an offense may be statutorily defined as a lesser-included offense of another, a charge on such a lesser-included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense. State v. Thomas, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988). The court must view the evidence in a light most favorable to the defendant. State v. Smith, 89 Ohio St. 3d 323, 2000 Ohio 166, 731 N.E.2d 645 (2000). Nevertheless, an instruction is not warranted every time any evidence is presented on a lesser-included offense. There must be sufficient evidence to allow a jury to reasonably reject the greater-offense and find the defendant guilty on the lesser-included offense. State v. Conway, 108 Ohio St. 3d 214, 2006-Ohio-791, 842 N.E.2d 996.Here, had the jury accepted Appellant's presentation of the facts stating Martin engaged him in a

fight over damage to the car door, during which neither he, nor Martin, possessed a firearm,1Link to the text of the note the jury would not have convicted Appellant on the lesser-included offenses of theft or assault. We do not find trial counsel ineffective in failing to request the instructions on the lesser-included offenses of theft and assault. Appellant also maintains the trial court's instruction to the jury following the jury's question as to whether they could have a transcript of the recorded interview of Appellant by Detective Hill was prejudicial error. Specifically, the trial court instructed the jury they must rely on their collective memories, and the court instructed the jury without Appellant being present in the courtroom. Pursuant to our analysis and discussion of Appellant's fourth assignment of error, we find counsel's failure to object error, but harmless error. Appellant had a right to be present in the courtroom, but the trial court's instruction to the jury was not substantive; therefore, Appellant was not prejudiced by the trial court's instruction. Finally, Appellant maintains trial counsel failed to offer witnesses at trial to corroborate the testimony as to how Appellant knew Roberta Jones. Appellant testified on direct examination he knew June Jones as he stayed right next door to her daughter. Tr. at 488. He testified he knew her granddaughter also. Tr. at 488. He testified he knew Ms. Jones for a "long period" and she's elderly. Tr. at 488. Appellant introduced testimony as to his knowledge and familiarity with Ms. Jones at trial. Any witnesses offered to corroborate his testimony would merely be cumulative. Further, we find any presumed error on behalf of trial counsel would be harmless error. Appellant has not demonstrated but for the alleged error, the outcome of the trial would have been otherwise. Appellant was able to offer evidence of his relationship and knowledge of Ms. Jones at trial through his own testimony and the jury could consider the information.

State v Barnes,

## UNREASONABLE APPLICATION OF THE STRICKLAND STANDARD

30.     The last reasoned opinion in this matter regarding the Strickland claim applies the

right standard, Strickland's objective and subjective analysis. The Supreme Court of the

United States has found, "'Surmounting Strickland's high bar is      never an easy task.'"

*Harrington v. Richter, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)*

*(quoting Padilla v. Kentucky, 559 U.S. 356. 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284*

*(2010)).* The Supreme Court has explained,

An ineffective-assistance claim can function to escape rules of waiver

and forfeiture and raise issues not presented at trial, and so the Strickland standard

must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.

*Id.*

31. Therefore, "[j]udicial scrutiny of a counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . . *Strickland, 466 U.S. at 689*. "Strickland specifically commands that a court 'must indulge the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment,'" recognizing "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions.'" *Cullen v. Pin holster, 563 U.S. 170, 195, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quoting Strickland, 466 U.S. at 689-90).*

32 Even with the doubly deferential standard applied in habeas matters, this matter requires reversal and a new trial. The state court's treatment of the presence issue is an unreasonable application of the Strickland standard. Counsel should not have agreed to hear the question without his client present in the court room.

33. The issues regarding the failure to cross examine the state's witness George Guy. This witness gave conflicting statements regarding the timing of this incident and that he could not initially identify the Petitioner. This is not based on some strategy that relied upon a deep and thorough investigation. Had there been any investigation, cross examination would have occurred.

34. The issues regarding the failure to object to the hearsay statements also rise to the level of ineffectiveness under the Sixth Amendment to the federal constitution and the tenents of

Strickland and its progeny.   The officers could testify to inadmissible hearsay     that allowed the jury to convict him of these offenses.

## PETITIONER IS ENTITLED TO RELEIF

35.   Counsel failed to demand that his client was present at a critical stage of the proceedings. This denied the Petitioner effective assistance of counsel.

### CLAIM NUMBER TWO

**THE TRIAL COURT ERRED IN ANSWERING A QUESTION FROM THE JURY DURING DELIBERATIONS WITHOUT THE PRESENCE OF APPELLANT THEREBY DEPRIVING HIM OF A FAIR TRIAL AS GUARANTEED BY THE STATE AND FEDERAL CONSTITUTIONS**

## LEGAL STANDARD

36.   The constitutional right of a criminal defendant to be present at trial is rooted in both the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. *United States v. Gagnon, 470 U.S. 522, 526, 105 S. Ct. 1482, 84 L. Ed. 2d 486 (1985).* This right is not absolute, however. The Supreme Court has recognized that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987).* Nevertheless, the Stincer court observed that "this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow,'" as opposed to when "'a fair and just hearing would be thwarted by his absence ....'" Id. *(quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S. Ct. 330, 78 L. Ed. 674 (1934)).* Whether a defendant has been improperly excluded from a trial proceeding must be considered in light of the whole record. *Snyder, supra, 291 U.S. at 115.*

Thus, in *Rogers v. United States, 422 U.S. 35, 41, 95 S. Ct. 2091, 45 L. Ed. 2d 1 (1975),* the Court held that it was reversible error for a trial judge to respond to jury communications without the presence of either the defendant or his counsel. The jury in that case had sent a note to the trial judge inquiring whether the court would accept a verdict of "Guilty as charged with extreme mercy of the Court." Without notifying the defendant or his counsel, the trial judge instructed the marshal who had delivered the note to advise the jury that the court's answer was in the affirmative. The jury returned a guilty verdict five minutes later, recommending "extreme mercy." *Id.*

37. Nevertheless, "not all communications between a judge and jury are critical stages meaning a stage at which there is a 'reasonable probability that [a defendant's] case could suffer significant consequences from his total denial of counsel.'" *Bourne v. Curtin, 666 F.3d 411, 414 (6th Cir. 2012) (quoting Van v. Jones, 475 F.3d 292, 313 (6th Cir. 2007).* "[V]iolations of these rights [to presence] are generally 'subject to harmless-error analysis.'" *Id. at 413 (quoting Rushen v. Spain, 464 U.S. 114, 119 n.2, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983)).* For example, in Rushen v. Spain, supra, the Supreme Court stated that "the prejudicial effect of a failure" to "disclose the communication [with a juror]" can "normally" be resolved in a post-trial hearing. *Rushen, 464 U.S. at 119.* In Rogers, the Court held that a trial court's ex parte response to a jury's question about permissible verdicts was reversible only after extensively analyzing whether the error was harmless. *Rogers, 422 U.S. at 40.* Likewise, in United States v. Gagnon, supra, the Court found that the defendants' due process rights were not violated when they were excluded from an in camera conference between the judge, defense counsel, and a juror regarding the juror's possible bias, because the defendants "could have done nothing had they been

at the conference, nor would they have gained anything by attending." *Gagnon, 470 U.S. at 527.*

## <u>GROUND WAS RAISED IN STATE COURT</u>

38.    Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court will review a petition for a writ of habeas corpus. *28 U.S.C. § 2254(b) and (c); see also Rose v. Lundy, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).* This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999).* In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990).* The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac, 456 U.S. 107, 125 n. 28, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982).* It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders, 647 F.2d 642, 647 (6th Cir. 1981).*

39.    Petitioner raised this ground for relief as assignment of error number two in his direct appeal to the Fifth District Court of Appeals.   He mentions the state and federal constitutions in the assignment of error and cites two cases that rely upon federal constitutional analysis Abrams and Bostic in their opinions.    He also raised this claim in his memorandum in support of jurisdiction to the Ohio Supreme Court.   This was raised pro se by the Petitioner.

## LAST REASONED OPINION BY THE INTERMEDIATE STATE COURT

40.     The Ohio Supreme Court declined jurisdiction in this matter.  The Fifth District Court of

Appeals found

> The Ohio Supreme Court has held that a communication concerning instructions
>
> between the judge and jury without the presence of the defendant or his counsel
>
> does not constitute grounds for reversal where the defendant's right to a fair trial
>
> was not prejudiced by the communication and the error was harmless beyond a
>
> reasonable doubt. See State v. Abrams (1974), 39 Ohio St.2d 53, 313 N.E.2d 823.
>
> If the communication is not "substantive," the error is harmless. State v. Jenkins
>
> (1984), 15 Ohio St.3d 164, 236-237, 15 Ohio B. 311, 473 N.E.2d 264. In Bostic v.
>
> Connor (1988), 37 Ohio St.3d 144, 150, 524 N.E.2d 881, the court held that the
>
> trial court's ex parte communication with the jury was harmless error because
>
> there was no "possibility that the jury's conclusion was influenced by the court's
>
> reply. "Here, the trial court instructed the jury they would have to rely on their
>
> collective memories regarding the interview Detective Hill conducted of
>
> Appellant. We find, the trial court's instruction to the jury was not substantive,
>
> and there was no possibility the jury's conclusion was influenced by the court's
>
> reply. Therefore, any presumed error was harmless beyond a reasonable doubt.
>
> State v Barnes

### FIFTH DISTRICT'S ANALYSIS IS UNREASONABLE

41.     The Fifth District found that this was not a substantive question from the jury to the

judge. They further found there was no way the jury was influenced by this response.

Petitioner suffered actual harm from the failure to make the defendant present or request

a waiver of his presence by counsel.   The harm suffered is that he has a right to be

present at all critical stages of the trial.  A question from the jury is a critical stage of

the trial. The giving of supplemental or additional jury instructions is a critical stage of a

criminal proceeding during which Petitioner was entitled to the presence of counsel.

*Rushen v. Spain, 464 U.S. 114, 119, n.4, 78 L. Ed. 2d 267, 104 S. Ct. 453 (1983); French*

*v. Jones, 114 F. Supp. 2d 638, 643 (E.D. Mich. 2000), after remand 225 F.3d 658 (6th*

*Cir. 2000).)* (  He has a right to confer with counsel regarding the question.  Id.

Petitioner is harmed as his rights to hear, understand and confer with counsel about

questions from the jury were sua sponte abrogated by the court.

42      The recording that the state provided as an exhibit was of such poor quality that the jurors

could not possibly interpret what was being said.  This transcript is the only way for the

jury to sift through the interview and get a clear understanding of it.   The court allowed

this recording to be played to the jury.

43.     Had the defendant be allowed to hear the jury's question he would have brought up the

substandard quality of the recording, the lack of the transcript and the fact the jury should

not rely solely upon the testimony of the Detective.

### PETITIONER IS ENTITLED TO RELEIF

44.     The Ohio Supreme Court has taken the *Rushen* decision and determined that a criminal

defendant must prove ,*beyond a reasonable doubt,* that he was harmed in a substantive

way, other than being blocked from a hearing, at a critical stage of his trial.

Judge Celebreeze, being unable to join the opinion in Abrams stated:

On the state of the record in this case, I am unable to join with the majority in deciding

that the error complained of is harmless. As was stated in *Jones* v. *State* (1875), 26 Ohio

St. 208: "It was the right of the plaintiff in error to be present at each and every instruction given to the jury as to the law of the case. This right was denied to him * * * and *without inquiry as to the correctness of the instruction so given* in his absence, it will be presumed that he was prejudiced thereby." (Emphasis added.)Further, in *State* v. *Grisafulli* (1939), 135 Ohio St. 87, this court determined that a harmless error statute could not be applied, where, as here, it is a situation "* * * which discloses the clear disregard of a constitutional prerogative. "A court should not communicate with a jury in their deliberation room, nor should a court give the appearance by any action that any part of a trial is veiled in secrecy

45.     The state Supreme court has unfairly placed the entire onus on the defendant to show why a hearing he was not a party to, that affected his constitutional rights, and which decided his future, harmed him in some way other than the blatant denial of a fair trial.

## GROUND NUMBER THREE

**THE TRIAL COURT MADE STATEMENTS REGARDING PETITIONER THAT WERE UNTRUE IN VIOLATION OF HIS RIGHT TO DUE PROCESS PROTECTED BY THE FIFTH AMENDMENT MADE APPLICABLE TO THE STATES BY THE FOURTEENTH**

46.     The court found," you had amassed a burglary with a felonious assault being shot— shooting Deon Draughn."  T.P. ,Sentencing hearing, at page 10, lines 20-21.   The court later references this shooting that did not occur following his maximum, consecutive sentence.

## LEGAL STANDARD

47.     It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law. *See Rose v. Clark (1986), 478 U.S. 570, 577, 106*

*S. Ct. 3101, 92 L. Ed. 2d 460; Tumey v. Ohio (1927), 273 U.S. 510, 534, 47 S. Ct. 437, 71 L. Ed. 749.* The Ohio Supreme Court has described judicial bias as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the [***186] litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt (1956), 164 Ohio St. 463, 58 O.O. 315, 132 N.E.2d 191, paragraph four of the syllabus; see, also, Cleveland Bar Assn. v. Cleary (2001), 93 Ohio St. 3d 191, 201, 754 N.E.2d 235.*

## GROUND WAS RAISED IN STATE COURT

48.    In the Petitioner's rule 26 (B) petition to the Fifth District Court of Appeals, he raised as an issue the court making a false and incorrect statement regarding having shot someone in the past.  This was raised in both timely filed application for reopening regarding the Petitioner's direct appeal.   This ground was also raised in the memorandum  in support of jurisdiction in both appeals of the applications to reopen the direct appeal.

The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose, 811 F.2d 322, 325 (6th Cir. 1987).* To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998); see also McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000)*

## INTERMEDIATE COURT DID NOT RULE ON THE MERITS

49.    Where the state court has not addressed or resolved claims based on federal law, most courts, including this one, have held that the decision is not an "adjudication on the

merits." Thus, a federal habeas court reviews such unaddressed claims de novo. See *McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003)* (distinguishing "no results" from no reasoning).

### PETITIONER IS ENTITLED TO RELEIF

50.   It is clear in this case that the court was biased against the Petitioner by stating in open court that he had shot Deon Draughn. He had in fact, not shot Mr. Draughn. This incorrect assertion by the trial court was used to substantiate the maximum sentence for all the offenses for which he was found guilty. Certainly if someone had shot someone in the past, this would make good cause to sentence them to a maximum sentence. The state has claimed, without proof, that this was a matter that Mr. Draughn did not want to pursue charges against the defendant. Mr. Draughn has stated, under oath, in an affidavit that he was not shot by the Petitioner. This clearly, incorrect, false statement of fact used in the sentencing of the Petitioner shows the bias towards the state and against the Petitioner.

51.   Petitioner was denied his due process of law when the court claimed that he had shot someone, when he had not done so. The state can claim this is merely unindicted conduct, but it shows bias on the part of the judge to mention a matter that never occurred to give a person the maximum sentence.

### *VI. Exhaustion*

52.   As a general rule, state prisoners must first exhaust their available state court remedies before seeking federal habeas corpus relief by fairly presenting all their grounds for relief to the state courts. 28 U.S.C. § 2254(b)-(c); *Clemmons v. Sowders,* 34 F.3d 352, 354 (6th Cir.1994). Normally, the exhaustion requirement is satisfied after the petitioner

fairly presents all his issues to the highest court in the state in which the petitioner was

convicted, thus giving the state a full and fair opportunity to rule on them before

seeking relief in federal court. *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994).

53.  All grounds for relief raised in this petition for a writ of habeas corpus have previously

been presented to the Ohio State Courts. To "fairly present" a claim to a state court, a

petitioner must assert both its legal and factual basis. Williams, 460 F.3d at 806 (citing

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a

"'petitioner must present his claim to the state courts as a federal constitutional issue —

not merely as an issue arising under state law.'" Id. (quoting Koontz v. Glossa, 731 F.2d

365, 368 (6th Cir. 1984)).

54.  Claim one was fairly presented in the direct appeal of the Petitioner's state court

convictions.

Claim two was fairly presented in the direct appeal of the Petitioner's state court

convictions.

Count three was fairly presented in the post-conviction, collateral appeal of the

Appellate rule 26 (B) proceedings

### VII. ADEPA One Year Statute of Limitations

55.  Pursuant to ADEPA, a state prisoner claiming imprisonment in violation of the laws or

Constitution of the United States has one year from the completion of direct review of

his case to file for federal habeas relief. *See 28 U.S.C. § 2244(d) (1)*.The time period in

which the defendant seeks state post-conviction review of his conviction tolls the statute

of limitations for purposes of AEDPA. 28 U.S.C. § 2244(d)(2).The one-year statute of

limitations begins to run on a habeas petition that challenges a resentencing judgment

on the date that the resentencing judgment became final, rather than the date that the original conviction became final. *Linscott v Rose, 436 F 3d 587.*

56.    This petition has been brought within the one-year statute of limitations as required by ADEPA. Petitioner was sentenced on February 15, 2015. A notice of appeal was timely filed on March 19, 2015. The Fifth District Court of Appeals reversed and remanded on March 17, 2016. Petitioner was resentenced to the same sentence on April 27, 2016. A notice of appeal and docketing statement was filed timely with the Fifth District Court of Appeals on May 25, 2016. On December 12, 2016, the court affirmed the court's decision. A superfluous application to reopen the direct appeal was filed November 1, 2016. This was denied. On January 1 ,2017, a notice of appeal and memorandum in support of jurisdiction was filed with the Ohio Supreme Court.
An application to reopen the appeal was filed pursuant to Ohio Appellate rule 26 (b) on March 2, 2017. It was denied on August 28, 2017. A notice of appeal was filed on October 12, 2017. On January 8, 2018, the Ohio Supreme Court denied jurisdiction.

## ***STATE COURT DEFERENCE***

*57.*    The Supreme Court recognized in Harrington that HN8 AEDPA "stops short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings." Id. "Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). Rather, "under AEDPA standards, a federal court can disagree with a state court's factual determination and 'conclude the decision was unreasonable or that the

factual premise was incorrect by clear and convincing evidence.'" Baird v. Davis, 388
F.3d 1110, 1123 (7th Cir. 2004) (quoting Miller-El, 537 U.S. at 340) (Posner, J.).

58.     In this case, the state court determinations are not entitled to deference.  The fact finding
as it relates to the constitutional claims raised in the court below are unreasonable.

## *VIII.   PRAYER FOR RELIEF*

WHEREFORE, the petitioner prays for:

1. Issue a writ of habeas corpus to have Petitioner brought before the court to the end
   that he may be discharged from his unconstitutional conviction;

2. Require Respondent to bring forward the entire record of the state court proceedings,
   and to specify any proceeding in the case that has been reported but not transcribed;

3. Require Respondent to file an answer admitting or denying each and every factual
   allegation herein;

4. Allow Petitioner to conduct discovery and to expand the record relating to the issues
   raised by this Petition;

5. Conduct a hearing at which proof may be offered concerning the allegations in this
   petition that Respondent does not admit;

6. Allow Petitioner sufficient time to brief the issues of law raised by this petition; and

7. Grant such other and further relief as may be appropriate.

Respectfully submitted,

**/s/ Eric Allen**

_____
ERIC J ALLEN            (0073384)
4605 Morse Road, Suite 201
Gahanna, Ohio 43230
eric@eallenlaw.com
Tele No. 614.443.4840
 Fax No. 614.573.2924